Filed 4/5/23  P. v. Rivera CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079816 |
| v. | (Super.Ct.No. FVI800549) |
| CHRISTOPHER SHANE RIVERA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Christopher Shane Rivera appeals from the trial court's order denying his petition for resentencing under Penal Code[1] 1170.95 (now renumbered to section 1172.6).  For the reasons set forth *post*, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On September 11, 2008, an information charged defendant with murder under section 187, subdivision (a) (count 1), first degree residential robbery under section 211 (count 2), and first degree residential burglary under section 459 (count 3).  As to counts 1 and 2, the information alleged that defendant (1) personally used a firearm under section 12022.53, subdivision (b); (2) personally discharged a firearm under section 12022.53, subdivision (c); and (3) personally discharged a firearm causing great bodily injury under section 12022.53, subdivision (d).  Moreover, as to all counts, the information alleged that a principal was armed with a firearm under section 12022, subdivision (a)(1).

On October 6, 2010, a jury found defendant guilty of counts 1 and 3; and guilty of the lesser included offense of attempted robbery as to count 2.  As to all three counts, the jury found true only the enhancement that a principal was armed with a firearm.

On November 9, 2010, the trial court sentenced defendant to a total term of 33 years to life as follows:  25 years to life for murder (count 1), plus one year for the enhancement; six years for the residential burglary (count 3), plus one year for the

_____

[1] All further statutory references are to the Penal Code unless otherwise specified.

weapon enhancement; and two years for count 2, plus one year for the weapon enhancement, stayed pursuant to section 654.

"On January 2, 2019, defense counsel filed a petition for resentencing under section 1170.95. The People stipulated to the fact that defendant stated a prima facie case for an order to show cause and an evidentiary hearing because of the jury's not true finding on the personal gun use allegation.

"The trial court conducted an evidentiary hearing. Following briefing by the parties and a review of the underlying trial transcripts and argument, on August 10, 2020, the trial court found defendant ineligible for resentencing because he was a major participant in the felony murder and acted with reckless disregard for human life." (*People v. Rivera* (Jan. 6, 2022, E075838, at p. 1.) [nonpub. opn.] (*Rivera II*).[2])

After defendant appealed, this court affirmed the trial court's denial of defendant's petition for resentencing. (*Rivera II*, *supra*, E075838, at p. 11.)

On May 13, 2022, defendant filed a "petition for recall of sentence and resentencing (P.C. §1170.95) (SB-775)."

On August 2, 2022, the trial court denied defendant's petition, remarking "PC 1170.95 decided and reviewed by appellate court."

On September 19, 2022, defendant filed a timely notice of appeal.

---

[2] On March 13, 2023, we granted defendant's request for judicial notice of the opinion in defendant's prior appeal, case No. E075838.

3

B.    <u>FACTUAL HISTORY</u>[3]

"On the evening of March 6, 2008, Lucas Buckingham was partying in his apartment with the murder victim, Atencio, Atencio's brother Andrew, and a friend of Andrew's. They were drinking and doing drugs. They went to sleep between 2:00 a.m. and 4:00 a.m. Atencio slept on the living room couch. Andrew and his friend left the apartment between 7:30 a.m. and 8:00 a.m. At that time, Atencio was in the living room talking on the telephone with his fiancé.

"Later that day, Troy Fava, Peter Lewis, Charles Carr, and defendant arrived at Buckingham's apartment complex in two cars. Fava and Lewis were in one car and defendant and Carr were in defendant's sister's BMW. After exiting their vehicles they walked through the complex to Buckingham's apartment. They entered through an already open front door.

"Carr testified that at the time of entry, Atencio was seated on the living room couch. He testified that defendant, Fava, and Lewis went into Buckingham's bedroom, and he remained at the doorway to the apartment. Defendant testified that as they walked in, Atencio stood up and asked, '[w]hat's going on?;' after being asked where Buckingham was, one of the group pushed Atencio into a chair.

"Buckingham testified that after going to sleep in the early morning hours, the next thing he remembered was that it was daylight and Fava was straddling him on the

---

**3** The facts are taken from the unpublished opinion in *People v. Rivera* (Apr. 18, 2012, E052339 (*Rivera I*)) [nonpub. opn]), from the appeal of defendant's underlying case.

4

bed and punching him. Buckingham indicated that Lewis was behind Fava and there was another person in the doorway he did not recognize. Fava then pulled him to the floor and continued punching him while Lewis was holding a black semiautomatic pistol. After Fava stopped beating Buckingham, Lewis asked where the stash was; Fava indicated to Lewis that that was not what they were there for, and that they needed to do what they came to do. Lewis then put down the gun, took his gloves off, and started to choke Buckingham.

"Defendant testified that after entering the apartment, he and Fava went to Buckingham's bedroom and Carr and Lewis remained in the front room with Atencio. As Fava was beating Buckingham, defendant stood at the door. In a statement to an investigating officer, defendant indicated it was he who asked Buckingham where the money and drugs were. He further testified that at some point Lewis entered the room and started beating on Buckingham.

"Buckingham testified that as he was being choked by Lewis, things began to go fuzzy. He then heard from the living room a large thud, which was followed by gunshots. Looking from his bedroom he could see Lewis standing in the area where the carpet joins the kitchen linoleum, shooting a firearm. Lewis was facing the front door. Two guns were being fired. He believes he heard approximately 15 gunshots. He then heard Fava say, '[w]e've got to leave now,' and they left the apartment.

"Carr testified that as he was standing at the door to the apartment he heard sounds of fighting coming from the bedroom. During this time, Atencio got off the couch and went towards the hallway leading to the bedroom; as Atencio turned, Carr saw a gun in

5

Atencio's right hand. Carr immediately ran from the apartment. As he was running he heard about 10 shots being fired. Defendant testified that as Lewis was beating up Buckingham he heard a commotion in the living room. He then saw Atencio moving towards the living room with a gun. Defendant went back into the bedroom and got on the floor; at this point, gunshots started; after they stopped, he ran outside.

"Buckingham indicated that after the shooting stopped he went outside; Atencio was lying on the ground bleeding with a bullet in his chest. Atencio was breathing at that point. After Buckingham called 911, he watched Atencio die. He did not see any firearms in the vicinity of Atencio.

"After leaving the apartment, defendant ran to his car. As he was leaving the apartment complex he stopped to pick up Carr. Carr testified they drove to Carr's house. When they got there, defendant pulled two guns from his jacket and indicated that he needed to do something with them. Defendant told Carr that Atencio would not stop shooting and that he had to shoot back. He indicated he did not know how many times he fired and that he just hung the gun around the corner and fired. He was unsure if he shot Atencio. Defendant told Carr that as he was leaving the apartment Atencio was lying on the ground and still moving; defendant picked up a gun lying near Atencio.

"Carr further testified that after going to defendant's house they drove into the desert and hid the guns in some rocks. At the time of the incident, Steven Pennington was on homicide detail with the San Bernardino County Sheriff's Department. He testified that he interviewed Carr in the early morning hours of March 8. Carr pointed out the area where the guns were hidden. He located a Glock model 22 and a Sig P226.

6

"William Matty, a criminalist with the State of California Department of Justice, testified that he examined a Glock model 22 and a Sig Sauer nine-millimeter. Three of the cartridges collected at the apartment were fired by the Glock pistol. Two other cartridges were fired by the Sig Sauer pistol. The two bullets retrieved during the autopsy could not have been fired by the Glock, but could have been fired by the Sig Sauer. The Sig Sauer was owned by William Rivera, defendant's father.

"Hazel Whitworth, a criminalist with the sheriff's crime laboratory, testified that Atencio had gunshot wounds to the chest area. He was somewhere in the entryway of the apartment when a bullet hit him in the heart. Dr. Chanikarn Changsri, a deputy medical examiner with the San Bernardino County Sheriff's Coroner's Division, indicated that the cause of Atencio's death was a bullet that penetrated between the ribs and went into the heart.

"The defense was premised on the notion that Carr was the shooter. Defendant's father testified that on the day before the shooting he was going to take his Sig Sauer pistol to the shooting range. Prior to going, he took the gun (in its case) from his safe and put it in his pickup truck. Thereafter, and at the behest of his wife, he agreed to go to San Diego for the weekend. As they were packing to leave for San Diego, he noticed the gun case in his pickup; rather than take it back into the house, he placed it on the rear floorboard of his daughter's BMW. Defendant testified he did not know of the presence of the gun. On the morning of the shooting, he drove his sister's BMW and picked up Carr; the two of them went to Fava's house. Lewis was at Fava's house. The rag top on

7

the BMW was down. Carr and others had access to the inside of the car during the period of time they were at Fava's house.

"Defendant testified that as he was leaving the apartment after the shooting he passed by Atencio; there were no objects on the ground around the victim. As he was leaving the complex in his car, he picked up Carr. When they arrived at Carr's house, and while defendant was on the telephone with Fava's sister, he noticed that Carr had a gun on his lap. Thereafter, Carr pulled another gun from a pocket of his hoodie. Shortly thereafter they went into the desert and Carr hid the guns in a rock pile." (*People v. Rivera I*, *supra*, E052339.)

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). In the opening brief, pursuant to *Anders v. California* (1967) 386 U.S. 738, appellate counsel has identified the following issues to assist the court in its search of the record for error:

1.      "Did the trial court prejudicially err in denying the petition on the ground that the issue had been fully litigated pursuant to a previous petition and reviewed by the appellate court?"

2.      "Whether the trial court prejudicially violated former section 1170.95, subdivision (b)(1) and (c), now section 1172.6, subdivisions (b)(1) and (c), by failing to require statutorily mandated briefing before ruling on appellant's eligibility for relief under section 1172.6?"

8

We sent notice to defendant regarding the filing of a *Delgadillo* brief, as follows: "Counsel for appellant has filed a brief stating no arguable issues can be found. Because this is an appeal from the denial of a post-conviction proceeding, this court is not required to conduct an independent review of the record but may do so in its discretion. [Citations.] The appellant is personally granted 30 days to file any supplemental brief deemed necessary. If appellant files a supplemental brief, this court will evaluate the specific arguments presented in that brief in its opinion. [Citation.] Failure to timely file a supplemental brief may result in the dismissal of the appeal as abandoned."

On March 13, 2023, defendant filed a handwritten supplemental brief. In the brief, defendant argues that in *Rivera II*, "the trial court found that through substantial evidence alone it was sufficient to deny relief, in direct opposition to the new law. The record is full of references and remarks to the standard being substantial evidence to find the prosecution has met their burden." Defendant contends that "[t]he trial court must hold a new 1172.6(d)(3) hearing and consider the newly amended language in the law that states 'substantial evidence is <u>INSUFFICIENT</u>.' The court must find more than just substantial evidence to find proof, beyond a reasonable doubt, that [defendant] is ineligible for relief. It must also keep in mind that merely stating beyond a reasonable doubt on the record does not mean that was the standard."

Defendant's argument is without merit because in *Rivera II*, we found that the prosecutor had to find, beyond a reasonable doubt, that defendant was ineligible for resentencing at the final eligibility hearing. We stated:

9

"To be eligible for resentencing, defendant must show that he 'could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective' in Sen. No. 1437.  (§ 1170.95, subd. (a)(3).)  As we have described *ante*, Sen. No. 1437 amended section 189 to require, in all felony-murder cases, proof that the defendant was the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life.'  [Citations.]

"At the final eligibility hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'  [Citations.]"  (*Rivera II*, *supra*, E075838, at p. 7.)

Although we recognized that there was a split in authority on what legal standard a trial court should apply at a section 1170.95, subdivision (d), hearing at the time the opinion was rendered, " 'we join[ed] the growing chorus that requires an independent finding by the trial court,' and proof beyond a reasonable doubt by the People that the petitioner is ineligible for relief.  [Citation.]" (*Rivera II*, E075838, at p. 7.)

However, as a reviewing court, we noted that when we review a ruling by a trial court, we should defer to the trial court's beyond a reasonable doubt finding and review that finding under a substantial evidence standard of review.  Therefore, based on the evidence, we found that the trial court's finding of defendant being a major participant who acted with reckless disregard for human life was supported by substantial evidence.

Although defendant argues that "the trial court found that through substantial evidence alone it was sufficient to deny relief," and "[t]he record is full of references and remarks to the standard being substantial evidence to find the prosecution has met their

10

burden," defendant is mistaken. As noted *ante*, in *Rivera II*, this court clearly stated that the prosecution had to prove defendant was a major participant who acted with reckless disregard for human life beyond a reasonable doubt. (*Rivera II*, *supra*, E075838, at p. 7.) Thus, the trial court's ruling, which relied on *Rivera II*, in denying defendant's motion for resentencing was proper.

## DISPOSITION

The order denying defendant's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.

11